TEXAS CITIES GAS CO. v. ELLIS.

No. 1351.

Court of Civil Appeals of Texas. Waco.

April 27, 1933.

Rehearing Denied June 8, 1933.

On Appellee's Motion for Rehearing Sept. 21, 1933.

Rehearing Denied Oct. 19, 1933.

718

Thompson, Knight, Baker & Harris, of Dallas, and Jos. W. Hale, of Waco, for appellant.

W. L. Eason and Tirey & Tirey, all of Waco, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Isadore Ellis, against appellant, Texas Cities Gas Company, to recover damages for injuries to his person and property sustained as a result of an explosion which he alleged was caused by gas. He further alleged that said gas had escaped from appellant's main and accumulated under his storehouse, and that

appellant was negligent in permitting it to so escape.

The case was submitted to a jury on special issues. The jury found all the issues of negligence submitted against appellant, and all the issues of contributory negligence submitted in favor of appellee. The jury further found that appellee, as the proximate result of appellant's negligence, had sustained personal injuries, and fixed compensation therefor at the sum of $15,000. The jury further found that appellee's property had been injured and damaged. The court rendered judgment on the verdict in favor of appellee against appellant for the sum of $15,645.

## Opinion.

Appellant presents various assignments of error, in which it complains of the manner in which the issue of compensation for injuries to appellee's person was submitted to the jury for determination. The issue submitted was as follows: "Special Issue No. 11: What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence, if any, would reasonably compensate the plaintiff for his injuries, if any? Answer in dollars and cents, if any."

The court, to guide the jury in determining its answer to said issue, submitted in immediate connection therewith the following explanatory instruction: "In connection with special issue No. 11 you may take into consideration only the following, to-wit: Any physical and mental pain and suffering, if any, that you may believe from a preponderance of the evidence that the plaintiff, Isadore Ellis, may have undergone in the past or may undergo in the future, if any, as a direct and proximate result of the negligence, if any, of the defendant; the reasonable value of the loss of time, if any, you may believe from a preponderance of the evidence he has sustained to this date as a direct and proximate result of the negligence, if any; of the defendant; and his decreased ability, if any, to earn money in the future you may believe from a preponderance of the evidence he has sustained (if he has sustained any), as a direct and proximate result of the negligence, if any, of the defendant; also the amount of money, if any, that you believe from a preponderance of the evidence that the plaintiff has reasonably and necessarily expended or become liable to expend for doctor bills and hospital services as a direct and proximate result of the negligence, if any, of the defendant."

Appellant contends that said issue was multifarious and that each separate element of damage which the jury was authorized by the terms of the explanatory charge to consider in answering the same should have been submitted as a separate and distinct issue and a separate finding invoked in response to each such issue. The Commission of Appeals, in International-G. N. R. Co. v. King, 41 S. W.(2d) 234 et seq., considered the contention urged by appellant and reviewed the authorities bearing thereon, and there held that a separate submission of each element of damage in a suit to recover compensation for personal injuries was calculated to confuse and mislead the jury and to cause findings amounting in the aggregate to a different sum from that which would have been found if only a single finding of damages had been made. The submission in personal injury cases of a single issue invoking a finding of compensatory damages in one aggregate sum is customary and has been frequently approved by our courts. Berwald v. Turner (Tex. Civ. App.) 52 S.W.(2d) 112, 114, par. 3; Texas & N. O. R. Co. v. Kveton (Tex. Civ. App.) 48 S.W.(2d) 523, 526, par. 4; Breckenridge Ice & Cold Storage Co. v. Hutchens (Tex. Civ. App.) 260 S. W. 684, 686, pars. 4 and 5, and authorities there cited.

Appellant contends that the jury was authorized, by the terms of the explanatory charge above quoted, when applied to the evidence, to allow as damages for lost time and impaired capacity to labor and earn money, a greater amount than claimed by appellee in his petition. Appellee alleged, in substance, that prior to his injury he was an able-bodied man, in good health, and had never been sick a day in his life; that he was capable of doing hard work; that he owned and operated a store and received the profits thereof; that he was capable of earning and did earn $200 per month. He further alleged that, since his injuries and as a result thereof, he had lost two months' time; that from the expiration of said period until the time of trial he had suffered a 50 per cent. impairment of his capacity to work, and that he would continue to so suffer for the remainder of his life; that he was then in bad health and could not work as he did before; was unable to conduct his business with the same efficiency as before, and that his incapacity was permanent. He further alleged that, by reason of his loss of time as aforesaid and his incapacity to labor prior to the trial and thereafter for the remainder of his life, he had been damaged in the sum of $15,000. He nowhere alleged that he was totally incapacitated from laboring and earning money, nor that his impairment in that respect was greater than 50 per cent. as aforesaid. The accident occurred December 15, 1931, and the trial was begun May 19, 1932. Appellee's testimony was sufficient to sustain a finding that he had not been able to work from the time of his injuries until the trial. He also introduced testimony tending to show that his capacity to labor had been totally destroyed, or at least impaired to a substantially greater extent than 50 per cent., as alleged in his petition.

The court, in the charge above quoted, told the jury, in substance, that they might, in fixing the amount of appellee's damages, take into consideration the reasonable value of the time lost to date of trial and his decreased ability to earn money in the future. The jury fixed appellee's entire compensation for physical and, mental pain and suffering, loss of time, impaired capacity to earn money in the future, and for expenditures for hospital charges, drugs, and doctors' bills, at the sum of $15,000. The authorities are uniform in requiring that every element of a recovery be supported by pleading, and within the limits alleged. When several elements of damage are pleaded and are recited as the basis for a finding by the jury of damages in the aggregate, and the evidence tending to establish one or more of such elements would authorize the recovery of a greater amount therefor than is claimed therefor in the pleadings, it is affirmative error to instruct the jury that they may consider or allow the amount shown by the evidence, without limiting such amount to the allegations of the pleadings. City of Dallas v. Jones, 93 Tex. 38, 47, 49 S. W. 577, 53 S. W. 377; Fort Worth & D. C. R. Co. v. Measles, 81 Tex. 474, 477, 478, 17 S. W. 124; Missouri, K. & T. Ry. Co. of Texas v. Beasley, 106 Tex. 160, 178, 179, 155 S. W. 183, 160 S. W. 471; Southern Pacific Co. v. Martin, 98 Tex. 322, 83 S. W. 675, 677; Missouri, K. & T. Ry. Co. v. Pawkett, 28 Tex. Civ. App. 583, 68 S. W. 323, 326, par. 5 (writ refused); Inter-National & G. N. R. Co. v. Shaughnessy (Tex. Civ. App.) 81 S. W. 1026, 1027; Rapid Transit Ry. Co. v. Williams (Tex. Civ. App.) 136 S. W. 267, par. 2; Dallas Consolidated Electric St. Ry. Co. v. English, 42 Tex. Civ. App. 393, 93 S. W. 1096, 1097, 1098; Martin-Brown Co. v. Pool (Tex. Civ. App.) 40 S. W. 820, 821 et seq.; Gulf, C. & S. F. Ry. Co. v. Simonton, 2 Tex. Civ. App. 558, 22 S. W. 285, 286. The court in this case having authorized the jury to consider, in fixing the amount of appellee's damages, the several elements recited in the explanatory charge above quoted, and the jury having fixed such damages at an aggregate sum, we do not know what amount was included therein for time lost prior to the trial nor for decreased ability to labor and earn money in the future. We are unable to suggest a remittitur which would cure the error.

Appellant presents numerous other assignments of error, and we have carefully considered all the same. The issues of law presented thereby will not necessarily arise in the same way, if at all, upon another trial. Since the case is to be reversed, we do not deem further discussion of the testimony proper or expedient.

For the error above discussed, the judgment of the trial court is reversed, and the cause remanded.

### On Appellee's Motion for Rehearing.

The judgment of the trial court was, at a former day of this term, reversed and the cause remanded because the charge of the court authorized, under the evidence admitted, recovery by appellee for a greater degree of permanent incapacity than he had alleged in his petition. The jury, as recited in our original opinion, assessed appellee's damages for the injuries sustained by him to his person at the aggregate sum of $15,000. Appellee has filed in this court a remittitur of one-half of said recovery. Manifestly, any possible injury to appellant from such error in the charge has been eliminated by such remittitur. We will therefore further consider the case to determine whether the judgment of the trial court should be reversed on other assignments presented by appellant.

The case was submitted to the jury on special issues. We have, for the sake of brevity, made the following abridgment of the answers of the jury thereto:

(a) Appellant's gas main on the street in front of appellee's store was at the time of the explosion in a leaky condition; gas was leaking therefrom at that time, and appellant's agents and employees discovered such leakage and knew thereof in time, by the exercise of ordinary care, to have stopped the same before the explosion.

(b) Appellant's agents and employees could have discovered, by the exercise of ordinary care, that gas was leaking from its main, in time to have stopped the same prior to the explosion.

(c) Appellant was negligent in maintaining its main in a leaking condition and in permitting gas to flow through the same at the time of the explosion, and such acts of negligence were proximate causes of appellee's injuries and damages. Appellant's agents could, in the exercise of ordinary care, have reasonably anticipated such explosion and ought to have reasonably anticipated and foreseen that its acts of negligence as aforesaid would probably result in injury similar to that sustained by appellee. There was no intervening agency between appellant's negligence and such injuries and damages.

(d) The explosion (which caused the damages sued for herein) was a gas explosion. It did not occur without fault on the part of either appellant or appellee. It was not an unavoidable accident, and the cause thereof was not unknown.

(e) The gas cock in appellee's store building was not open nor was the service pipe underneath the floor thereof broken at the time of the explosion.

(f) Appellee's stock of goods immediately prior to the explosion was worth the sum of $1,100 and immediately thereafter only the sum of $225, and $15,000 would reasonably

compensate appellee for the injuries to his person.

The court rendered judgment on the verdict, as recited in our original opinion.

 Appellant presents a group of assignments in which it complains of the action of the court in refusing its request to instruct the jury peremptorily to return a verdict in its favor. Appellant's principal contentions in that connection are that there was no evidence that the explosion was caused by gas, that such gas came from its main, nor that that portion of its main immediately in front of appellee's store was defective. The building, occupied by appellee as a store and residence, was situated on the north side of Barron street in the city of Waco and fronted on said street. It was immediately east of an alley running northward at right angles with said street. The building was 20 feet wide. The front gallery thereof began on the sidewalk and extended back 6 feet to the storeroom, which extended 28 feet farther back to the living quarters. The floor of the front part of the storeroom rested flat upon the ground and the rear part was only a few inches above it. The walls of the store building on each side extended to the ground. Appellant's gas main was located in the street on the side next to appellee's store and only a few feet from the sidewalk. A service pipe installed by appellant extended from the main to the living rooms in the rear of said building. It was located underneath the floor of the store. The riser into the storeroom was not in use at the time, but was covered with a metal cap. There was no fire in the storeroom and no other provision therefor. The explosion occurred beneath the floor of the storeroom. A part of the floor was blown away, the walls were bulged out, and a piece of lumber was driven perpendicularly through the ceiling. People in the store at the time were blown up against the ceiling and fell back upon the floor or ground. Immediately after the explosion a small flame was discovered coming from under the west side of the floor near the front of the building. How ignition occurred was not shown. Ground permeated with escaping gas has a frosted, whitened appearance, and such condition can be easily recognized. The ground along appellant's main and at and around the front of appellee's store was in that condition, and such condition could have been easily discovered. Attention was first attracted to the situation a week or ten days before the explosion by the discovery of a burning meter box in front of a house across the alley west of appellee's store. When the flame in said box was extinguished, it could be relit by the touch of a burning match. It was actually extinguished and relit several times before appellant was advised of its condition. When so advised appellant immediately sent an employee to investigate. He dug holes in the earth with an iron bar. Such holes were dug along the main on each side of the burning box, 8 or 10 feet apart. There was testimony that such tests were made in front of appellee's premises. Each time when the bar was withdrawn the hole would light at the touch of a burning match. Appellant thereupon dug up a section of the main in front of said meter box and replaced it with new pipe. A few days after such replacement the explosion occurred. The next day after the explosion a post was pulled out of the ground at the corner of appellee's gallery. The hole would burn when lighted, like the meter box had theretofore done. A small trench about 2 inches deep was scratched in the soil at or about appellee's store and it would burn when lighted. Appellant, after the explosion, made extensive borings in the soil for a considerable distance on each side of appellee's premises, and in each instance the hole would burn when lighted. About two weeks after the explosion appellant laid a new main on the opposite side of the street. Such new main extended a block or more on each side of appellee's premises. Appellant then abandoned the old main entirely. It made no attempt to salvage the abandoned pipe. There was a great mass of testimony bearing on the situation. We have recited only a few of the circumstances in evidence tending to show that the soil at and around appellee's store was saturated with gas and that such gas escaped from appellant's mains. There was affirmative testimony tending to exclude the possibility that the explosion resulted in whole or in part from accumulated sewer gas. No other cause therefor except the accumulation of gas which had escaped from appellant's mains was suggested by the testimony. It is true appellant introduced testimony denying that it made a general test of the soil along its main prior to the explosion and claiming that such test was limited to the immediate vicinity of the burning meter box, where it removed and replaced a joint of pipe. In passing upon whether the court erred in refusing appellant's request for an instructed verdict, we are required to view the evidence in the light most favorable to appellee and to discard all evidence to the contrary. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315, par. 4. The evidence on the issues of fact here under consideration was wholly circumstantial. Appellee was not required to show by direct testimony that appellant's main immediately in front of his store was defective, that gas escaped therefrom, accumulated under his store, and there exploded. All that was required of him was to introduce testimony of attending facts and circumstances from which a reasonable mind might infer, deduce, or conclude that such was the case. Gulf, C. & S. F. Ry. Co. v. Battle (Tex. Civ. App.) 169 S. W. 1048, pars. 2 and 3 (writ refused); International & G. N. R. Co. v. Fin-

ger (Tex. Civ. App.) 16 S.W.(2d) 132, 134, par. 3; Lancaster v. Magrill (Tex. Civ. App.) 244 S. W. 1078, 1079, 1080 (writ refused); Houston E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 193, 194, 146 S. W. 533; Hutcherson v. Amarillo St. Ry. Co. (Tex. Com. App.) 213 S. W. 931, 933, par. 2; Fort Worth & D. C. Ry. Co. v. Stalcup (Tex. Civ. App.) 167 S. W. 279, 282, par. 1 (writ refused). The probative force of the evidence introduced in this case was sufficient to meet the requirements of the rule announced in the above authorities. It was the peculiar function of the jury to determine what inferences or deductions should be drawn from the facts in evidence. Maryland Casualty Co. v. Williams (Tex. Civ. App.) 47 S.W.(2d) 858, 859, par. 2, and authorities there cited. We think the action of the court in submitting the issues of fact under discussion to the jury for determination was proper. Such holding is in accord with the rules announced in the following cases: Houston Gas & Fuel Co. v. Perry (Tex. Civ. App.) 55 S.W.(2d) 901; Dallas Gas Co. v. Bankers' & Shippers' Ins. Co. (Tex. Civ. App.) 53 S.W.(2d) 130, 132, par. 2; Fort Worth Gas Co. v. Cooper (Tex. Civ. App.) 241 S. W. 282; James v. Bailey Reynolds Chandelier Co. and James v. Kansas City Gas Co., 325 Mo. 1054, 30 S.W.(2d) 118; Sipple v. Laclede Gas Light Co., 125 Mo. App. 81, 102 S. W. 608; Warfield Natural Gas Co. v. Wright, 246 Ky. 208, 54 S.W.(2d) 666; Nash v. St. Joseph Gas Co. (Mo. App.) 234 S. W. 360.

 ██ Appellant presents assignments in which it complains of the action of the court in overruling its motion to discharge the jury and declare a mistrial. Said motion arose out of and was based upon the following occurrence: Appellee's witness Cohen was testifying. He was the first witness in the case and had been examined and cross-examined. He was the owner of the building which appellee occupied at the time of the explosion and which was injured thereby. Appellee was endeavoring to prove by him that appellant owned the mains in Barron street in front of the premises and that complaint of escaping gas had been made to Mr. Allen, its local manager. He had testified that immediately after the explosion he went to appellant's office in the city of Waco and had a conversation with said local manager, but had not stated what was said in said conversation. On further cross-examination with reference to whether appellant was the only company distributing gas in the city of Waco, he stated that when he made complaint to said manager he did not deny that such was the fact. At the close of such additional cross-examination, counsel for appellee asked the witness: "What did you and Mr. Allen talk about?" And the witness replied: "I was talking to Mr. Allen and I told him if his company—I didn't know that he had private insurance for damages, that their company individually had to stand their dam-

ages, and I told him it is better for him to settle the whole thing before bringing it to court, that it will be cheaper to make—" Counsel for appellant interrupted and said, "We object to that conversation", and the court replied, "Yes, I sustain the objection to that." Counsel for appellee then elicited from the witness without objection that witness had had two conversations with Mr. Allen in appellant's office; that they were talking about the explosion in appellee's store; that Mr. Allen never told him that appellant didn't own said gas main nor that there was any other gas company in Waco. The witness was shortly thereafter excused, and thereupon appellant filed its motion to discharge the jury and declare a mistrial, which motion was overruled. The reference by the witness to the subject of indemnity insurance which he then understood appellant carried was a voluntary interpolation in his testimony, and not necessarily responsive to the question asked. There is nothing to show that such statement was or should have been anticipated by counsel for appellee as a part of the answer of the witness to such question. An improper purpose should not be attributed to counsel in the absence of reasonably conclusive evidence of its existence. Appellant seems to recognize the absence of anything to indicate that counsel for appellee expected such statement from the witness in response to the question propounded. Appellant stresses the fact that at a later day in the progress of the trial, after appellee had introduced his testimony in chief, his counsel offered to prove by him that he had talked to appellant's manager about his damages and had been told by such manager, in substance, that appellant carried indemnity insurance and that the insurer would defend any suit brought, would furnish an attorney to conduct the defense therein, bear all expense incident thereto, and pay any judgment that might be recovered. The statement of facts shows that such offer was made in the absence of the jury, and was, on objection of appellant, promptly denied by the court. Such statement, it will be noted, was made by appellant's manager to appellee in person and not to the witness Cohen. We do not feel justified in holding that such incident is sufficient to support a reasonable inference that counsel for appellee intended or expected that its witness Cohen would refer to his understanding with reference to appellant's carrying indemnity insurance in answering the question asked. We consider such unexpected answer, to which objection was promptly sustained by the court, wholly insufficient to justify the drastic action of discharging the jury and declaring a mistrial. That appellant has in fact suffered any injury therefrom would be, at best, a mere surmise. We do not therefore deem the same sufficient to require a reversal of the judgment of the trial court. Carter-Mullaly Transfer Co. v. Bustos (Tex. Civ. App.) 187 S. W. 396, par. 2

(writ refused); Humble Pipe Line Co. v. Kincaid (Tex. Civ. App.) 19 S.W.(2d) 144, par. 5 (writ refused); Jimmie Guest Motor Co. v. Olcott (Tex. Civ. App.) 26 S.W.(2d) 373, par. 1; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661, par. 4 (writ refused); Horton v. Benson (Tex. Civ. App.) 266 S. W. 213, par. 11. The testimony of appellee, offered by his counsel in the absence of the jury, tends to show that appellant's manager frankly disclosed to him that it was its purpose to depend wholly on its insurer to consider his demands, prepare. and present the defense in any suit he might bring, and pay any judgment he might recover. The exclusion of testimony concerning indemnity insurance carried by a defendant in a damage suit is solely for his protection. When such defendant openly announces that he carries such insurance and that he is relying on the insurer not only to pay any judgment that may be recovered against him, but also to prepare and present his defenses in any suit that may be brought, he ought to reasonably anticipate that some inadvertent reference to such situation might be made by witnesses testifying in the case. See, in this connection, S. H. Kress & Co. v. Dyer (Tex. Civ. App.) 49 S.W.(2d) 986, 988, pars. 4 and 5, and authorities there cited; Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W.(2d) 702, 706, pars. 12 and 13, and authorities there cited; Red Star Coaches v. Lamb (Tex. Civ. App.) 41 S.W.(2d) 523, 526, par. 2; Lewis v. St. Louis Independent Packing Co. (Mo. Sup.) 3 S.W.(2d) 244, par. 11. Appellant's several contentions in this connection are overruled.

Appellant presents a group of assignments in which it complains of various statements made by counsel for appellee in their argument to the jury. Neither objection nor exception was reserved to any of such statements at the time they were made. We have carefully considered all such statements and have reached the conclusion that none of them were so clearly prejudicial that an instruction by the court to disregard the same would not have been effective to remove any possibility of injury therefrom. Such being the case, appellant's failure to make timely objection thereto and to request such an instruction constituted in legal effect a waiver of his right to complain thereof. City of Waco v. Rook (Tex. Civ. App.) 55 S.W.(2d) 649, 655, par. 17, and authorities there cited. See, also, Rio Grande E. P. & S. F. R. Co. v. Dupree (Tex. Com. App.) 55 S.W.(2d) 522, 526, par. 16 et seq.; Southern Travelers' Ass'n v. Masterson (Tex. Civ. App.) 48 S.W.(2d) 771, 776, par. 9, and authorities there cited; McMullen v. Parker (Tex. Civ. App.) 45 S.W.(2d) 1011, 1012, par. 6; Commercial Standard Ins. Co. v. De Hart (Tex. Civ. App.) 47 S.W.(2d) 898, 901, par. 7, and authorities there cited.

Appellee's motion for rehearing, in view of his remittitur, is granted, the judgment of the trial court is reformed by deducting therefrom the sum so remitted, and as reformed, same is affirmed.